BROWN, Circuit Judge,
dissenting:
In today’s decision, the court takes the extraordinary step of awarding fees to Tribal Intervenors, who intervened on the side of a petitioner in a Clean Air Act challenge and offered an argument that other petitioners lacked standing to make. As the court acknowledges, we never reached the Tribal Intervenors’ claim and their argument had no effect on the out *1285 come of the litigation. Nevertheless, the court finds the Petitioners are entitled to a fee award for contributing to the “proper implementation and administration” of the Act or otherwise “serv[ing] the public interest.” (Op. at 1281).
Section 807(f) of the Clean Air Act, 42 U.S.C. § 7607(f), permits the award of attorneys’ fees in certain proceedings “whenever [the court] determines that such award is appropriate.” In an early case dealing with this fee provision, Judge Wilkey warned that such broad and ill-defined authority was likely to lead to an “all-but-the-frivolous” standard — a result he considered deeply at odds with Congressional intent. Alabama Power v. Gorsuch, 672 F.2d 1, 16-17 (D.C.Cir.1982) (Wilkey, J., dissenting). “If Congress meant for ‘appropriate’ to mean that all non-frivolous [applicants] would recover, it surely would have said so.” Id. Despite Judge Wilkey’s pessimism, this Court initially resisted the temptation to use the “vagueness of the statute ... to validate the whim of any judge.” Id. at 16. And other courts, interpreting similarly worded provisions, have generally avoided establishing such a dramatic alteration in the fee award structure, concluding that intervenors are eligible for fees only when they play a “significant role in the litigation.” See Shaw v. Hunt, 154 F.3d 161, 168 (4th Cir.1998); Wilder v. Bernstein, 965 F.2d 1196, 1204 (2d Cir.1992); Grove v. Mead Sch. Dist. No. 351, 753 F.2d 1528, 1535 (9th Cir.1985); see also Donnell v. United States, 682 F.2d 240, 248 n. 16 (D.C.Cir.1982) (noting even a prevailing party would not be entitled to fees where it merely caught “a train on its way out of the station,” played “no part in firing the boiler, getting up a head of steam, or opening the throttle,” but “just went along for the ride”).
In Shaw, for example, the court concluded that a fee award was appropriate in the exceptional circumstances where intervenors, deprived of standing during the course of the litigation, had taken an active, unique role in the litigation and contributed to its success. Shaw, 154 F.3d at 166. However, the court emphasized the narrowness of its holding: “Moreover— and this is a point we stress — it is not every permissive intervenor who will be entitled to fees. Courts should deny fees to intervenors who have failed to play a ‘significant role in the litigation.’ ” Id. at 168. Similarly, in Seattle School Dist. No. 1 v. Washington, 633 F.2d 1338, 1341 (9th Cir.1980), plaintiff school districts and intervenors challenged Initiative 305, an anti-busing initiative. Although the court concluded that a fee award was permissible for an issue that had not been fully litigated, it pointedly avoided making any broad generalization about the propriety of such an award under different circumstances. In fact, the court declined to award fees for intervenors’ participation in Phase I of the litigation — during which the case was resolved — because the school districts were fully capable of litigating the unconstitutionality of Initiative 305 and the intervenors’ role was de minimis. Id. at 1349. By contrast, the court found intervenors’ substantial time and effort spent preparing for Phase II could be compensated because the intervenors’ essential role in that phase of the litigation was “apparent from the onset of [the] case.” Id. If Initiative 350 was found to be constitutional in Phase I, which was a “substantial likelihood,” the school districts would be unwilling to argue they were operating discriminatory school districts. Id. at 1349-50. In that case, the entire burden of litigating Phase II would have fallen on intervenors. Id. at 1349. Tellingly, no other court has ever determined an intervenor merited a fee award for the sort of anemic effort the court rewards today. After more than two decades, the “all-but- *1286 the-frivolous” standard Judge Wilkey feared has become a reality in this circuit.
Apparently, the court opts for such a radical departure simply because it can. The court says our precedent — which has consistently imposed the more exacting “significant role” standard- — -is distinguishable. That much is true. In Alabama Power v. Gorsuch, 672 F.2d at 4, we rejected a fee request under section 307(f) of the Clean Air Act — the same section at issue here — because an intervenor seeking to recover fees from the party on whose side it participated had failed to make any “unique contribution ... to the strength of that party’s legal position.” In Donnell v. United States, 682 F.2d at 248-49, we rejected a request for fees under the Voting Rights Act where an intervenor on behalf of the Justice Department had “contributed nothing the Government did not also contribute.” That case focused heavily on the fact that the party had intervened on behalf of the government, a circumstance that made the fee-shifting provisions’ objectives “far less compelling.” Id. at 246. But it also endorsed the broader principle that “[i]f a lawsuit is successful, but the intervenor contributed little or nothing of substance in producing that outcome, then fees should not be awarded.” Id. at 248. I find the analytical force of those earlier precedents — -particularly the principles articulated in Donnell — undiminished by the factual differences in this case.
The broad grant of statutory discretion in Section 307(f) has usually been interpreted as a narrow exception to the traditional rule that only prevailing parties are entitled to fees. “Section 307(f) was meant to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties — parties achieving some success ...” Ruckelshaus v. Sierra Club, 463 U.S. 680, 682-88, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). But the Court was careful to note that neither “trivial success on the merits” nor “purely procedural victories” would automatically justify fee awards. Id. at 688 n. 9, 103 S.Ct. 3274. Tribal Intervenors can claim only a procedural victory. As the government points out, they challenged a regulation that was eventually overturned solely on grounds raised by other parties. This makes their claim much more akin to the wholly unsuccessful plaintiffs whose claim was rejected in Ruckelshaus. More significantly, nothing about Tribal Intervenors’ fact-based challenge to the EPA’s compliance with treaty fishing rights had any impact on EPA’s authority to administer and implement the delisting rule under Section 7412(c)(9) — the basis on which the case was resolved.
We have held that the court need not parse the success of each separate argument in support of a single claim when determining eligibility for fees. See Am. Petroleum Inst. v. EPA 72 F.3d 907, 912 (D.C.Cir.1996). But that does not mean every separate claim — even one completely unrelated to the successful strategy — must be deemed a success because it sought the same remedy. New Jersey and fourteen additional states and environmental organizations challenged the “Delisting Rule,” which had removed power plants from the list of sources whose emissions are regulated under Section 7412. See 70 Fed.Reg. 15,994 (Mar. 29, 2005). Tribal Intervenors elected not to file a petition for review of the Delisting Rule, but rather challenged the ancillary “Reconsideration Rule,” a proceeding in which the EPA made two substantive changes to the Clean Air Mercury Rule but no substantive change to the Delisting Rule. See 71 Fed.Reg. 33,388 (June 9, 2006). They participated in the challenge to the Delisting Rule only as intervenors, and made no arguments with respect to the determinative issue in the case. Tribal Intervenors’ claim, a fact- *1287 based challenge to the Reconsideration Rule based on treaty rights, was not resolved by the Court, even though the Court ultimately granted the remedy they sought. See City of Sherrill v. Oneida Indian Nation of N.Y., 544 U.S. 197, 213, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005) (explaining difference between a claim and a remedy). Intervenors should not be rewarded simply for challenging the same regulation based on a different claim for relief arising out of a different legal theory. See Hensley v. Eckerhart, 461 U.S. 424, 434-35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); Sierra Club v. EPA, 769 F.2d 796, 801-02 (D.C.Cir.1985).
The court attempts to justify its decision by claiming that denying attorneys’ fees to Tribal Intervenors would discourage future intervenors from bringing “useful” claims (Op. at 1281). Its concern is overblown. While it is admittedly impossible for parties to determine in advance what issues will be reached by the court, it is entirely possible for a litigant to make a reasonable estimation of how large an impact his issue is likely to have on the litigation, in light of the other challenges being raised. See Seattle Sch. Dist. No. 1, 633 F.2d at 1349-50 (noting there was a “substantial likelihood” that the initiative at issue would be found constitutional and that intervenors’ role would therefore be critical). In this case, the petitioners raised a sweeping challenge to the EPA’s authority to administer and implement the Delisting Rule — a claim that, if successful, would resolve all of Tribal Intervenors’ issues. The likelihood that Tribal Intervenors, who brought a narrow, fact-based challenge to an ancillary regulation, would play a critical role in this case was infinitesimally small from the outset. Refusing to reward them for their decision to pile onto the petitioners’ different- — -and much more substantial — claim would cause little danger of discouraging “useful” interventions in the future. It would merely force potential intervenors to conduct a basic cost-benefit analysis to determine whether their claim is sufficiently likely to make an actual impact to justify the risk they "will bear their own costs. While “20/20 acuity of hindsight” isn’t required, Am. Petroleum Inst., 72 F.3d at 912, willful blindness should not be permitted.
The court also claims that Tribal Intervenors assisted the process by providing an alternative basis for its disposition (Op. at 1283). It is difficult to see how an argument is “especially helpful,” however, when it in no way contributes to the resolution of a case. In fact, tangential arguments piled on by self-interested intervenors force the agency — and the court — to waste valuable resources evaluating and addressing arguments that will have no impact on the court’s ultimate decision. The Court seems to forget that the EPA must respond to all arguments lest it be deemed to have conceded them. Here, the EPA spent twenty-four pages of its reply brief addressing arguments made by Tribal Intervenors, wasting valuable resources that might otherwise have been devoted to rebuttal of the petitioners’ much more substantial- — -and ultimately victorious— claims. Were Tribal Intervenors’ arguments costless, it might be tempting to grant their request. However, “we live in a world of scarce resources and the question inevitably becomes how best to allocate them.” Alabama Power, 672 F.2d at 29 (Wilkey, J., dissenting). In this case, it was clear from the outset that Tribal Intervenors’ fact-based objection to the ancillary Reconsideration Rule would not play a substantial role in petitioners’ sweeping and substantial challenge to the overarching Delisting Rule. Moreover, allowing all but the most frivolous or duplicative intervenors to recover attorneys’ fees encourages “additional filings of dubious value in *1288 suits already of notorious complexity.” Alabama Power, 672 F.2d at 30 (Wilkey, J., dissenting).
The court seeks to reassure us that its holding will not encourage fee-seeking interventions, pointing out “all the tools” courts have to prevent that from happening (Op. at 1282). The tools, though, turn out to be few and frail. The majority overstates the value of the standing requirement because it fails to recognize the substantial practical difference between participating in litigation as a petitioner or as an intervenor. Our litigation system forces the petitioner to literally “put his money where his mouth is” by bearing all costs associated with his suit. Even where Congress departs from the “American rule” by allowing recovery of attorneys’ fees, a petitioner must attain some success on the merits of its claim to warrant reimbursement. Ruckelshaus, 463 U.S. at 682-84, 103 S.Ct. 3274. Thus, a rational plaintiff will bring suit if and only if the expected judgment would be at least as large as his expected legal costs, i.e. the total legal costs discounted by his probability of losing at trial. See Steven Shavell, Suit, Settlement, and Trial: A Theoretical Analysis Under Alternative Methods for the Allocation of Legal Costs, 11 J. Legal Stud. 55, 58 (1982). Because intervenors bear far fewer costs — and thus shoulder far less risk — than petitioners, a party with a marginal claim would be substantially more likely to intervene than it would be to file suit in its own right. The majority skews the calculus even further by allowing an intervenor to hitch its completely unrelated claim to a promising challenge to the same regulation. Its holding encourages parties to pile on claims that are not sufficiently meritorious to justify filing in their own right.
The majority conflates, and ultimately eviscerates, the bar against “frivolous” litigation and the court’s discretion to determine what is “appropriate.” Under the court’s newly minted standard, it is no impediment to a fee award that an intervenor’s argument is irrelevant to the outcome, nonsubstantive, and does nothing to strengthen the primary legal position. The court defines “appropriate” so broadly that an intervenor is now entitled to fees unless the challenge is patently frivolous.
It is hard to see what is inappropriate about requiring intervenors to carefully consider what is likely to enhance and promote the purposes of any given litigative effort. Creating a risk — even a small one — that intervenors will be required to bear their own costs will at least force them to undertake a basic cost-benefit analysis to determine when to avoid spending money. See Richard L. Revesz and Michael A. Livermore, Retaking Rationality 12 (2008) (“In the absence of an obvious endpoint [for spending], we need a mechanism that tells us when to stop spending money. Cost-benefit analysis is that mechanism[.]”). And if parties want to pile on just for the sake of piling on — to pursue some frolic of their own — why would it be inappropriate to require them to pay the costs of that indulgence?
Since preserving the public fisc from unreasonable depredations also serves the public interest, I would not be so eager to find new ways to waste Other People’s Money.
I dissent.