813 F.2d 639
 55 USLW 2504, 1986-1987 O.S.H.D. ( 27,838
 EASTERN ASSOCIATED COAL CORPORATION, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION and
Secretary of Labor, Mine Safety and Health
Administration (MSHA), on behalf of
Robert A. Ribel, and Robert A.
Ribel, Respondents.
Robert A. RIBEL, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION and Eastern
Associated Coal Corporation, Respondents.
 Nos. 86-3832(L), 86-3833.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 10, 1986.
Decided March 9, 1987.
 
 Ronald S. Cusano (Anthony J. Polito; Corcoran, Hardesty, Whyte & Polito, P.C.; Sally S. Rock, Associate General Counsel, Eastern Associated Coal Corp., Pittsburgh, Pa., on brief), for Eastern Associated Coal Corporation.
 Barbara Jo Fleischauer, Morgantown, W.Va., for Robert A. Ribel.
 Vicki Shteir-Dunn (George R. Salem, Deputy Associate Solicitor; Cynthia L. Attwood, Associate Sol.; Ann S. Rosenthal, Counsel, Appellate Litigation; Linda L. Leasure, Asst. Counsel, Arlington, Va., on brief), for Secretary of Labor.
 Before SPROUSE, ERVIN and CHAPMAN, Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 Two factually separate issues are presented in this appeal and cross-appeal. On the first issue, we find that the decision of the Administrative Law Judge, affirmed by the Federal Mine Safety and Health Review Commission, that the Eastern Associated Coal Corporation had discharged its employee Robert A. Ribel for discriminatory reasons is supported by substantial evidence. On the second issue, which is Appellant Ribel's claim for reimbursement of attorney's fees and costs to recompense his private attorney, we hold that the claimant is not entitled to attorney's fees and costs where the action was brought by the Secretary of Labor. We affirm in part, and reverse in part.
 
 I.
 
 2
 The Eastern Associated Coal Corporation ("Eastern") owns and operates the Federal No. 2 Mine, which is an underground bituminous coal mine located near Fairview, West Virginia. Eastern employs the "longwall" method of mining, which involves the extraction of coal from a coal face approximately four or five-hundred feet in length by the operation of a large mechanical cutting device known as a shearer. The shearer is capable of cutting while moving in both directions along the coal face; this practice is called "double cutting."
 
 
 3
 Appellant Ribel, along with one Wells and one Kanosky, was employed as a "chocksetter" on the midnight shift at the Seven-Right long wall section at the Federal No. 2 Mine.[1] In May of 1983, Ribel, Wells and Kanosky complained to management at Eastern about the increased coal dust to which they were exposed while double cutting. As a result of the chocksetters' complaint, Eastern discontinued the practice of double cutting on the Seven-Right section during the midnight shift.
 
 
 4
 After double cutting had been discontinued, on May 18, 1983, Hawkins, the midnight shift foreman, met with Ribel, Wells, and Kanosky. The foreman in essence informed the miners that, if they would resume double cutting, they would continue to enjoy their overtime privileges and favorable job assignments. The foreman told the miners that if they failed to resume double cutting, these privileges would end.
 
 
 5
 The miners filed a discrimination complaint with the Mine Safety and Health Administration on June 1, 1983. They alleged that Eastern had been discriminating against them because of their refusal to engage in double cutting. The Administrative Law Judge ruled that Eastern did not violate the Federal Mine Safety and Health Act of 1977, 30 U.S.C. Sec. 801 et seq.
 
 
 6
 On August 5, 1983, a meeting with several miners, including Ribel, Kanosky, and Wells, along with the foreman Hawkins, was called by the longwall coordinator at the mine, Michael Toth. Toth testified that he assembled the crewmen in order to resolve certain complaints as to fire safety precautions and to discuss with the crew the numerous problems that Eastern had been experiencing with the mine telephone system, by which members of the crew could communicate with each other along the longwall face. During the meeting, Toth asked Hawkins to select two members of the crew to perform a pre-shift examination of the telephones so that the longwall section would be ready for work when the meeting was concluded. Hawkins selected a mechanic Toothman and appellant Ribel. Ribel testified that he walked along the longwall face and checked each of the telephones, which were spaced at intervals along the longwall face, by calling back to Toothman, who remained at the headgate. Ribel testified that after checking the telephones he remained at the far end of the longwall face, the "tailgate," in order to perform another task which he had been assigned.
 
 
 7
 After Ribel's departure from the meeting, Toth discussed with the remainder of the crew the complaints that had been made by the crew against Hawkins. At that time, Wells began laughing. Toth then said to Wells that "all of this petty stuff that has been going out to the Safety Department, every day, ... is going to stop, or you will be next."
 
 
 8
 Shortly after this exchange, Toth left the meeting and proceeded to the headgate area. He was informed by Toothman that phones No. 52 and No. 89 were reported by Ribel not to be working properly. Toth checked the two phones and found that they were in working order. Toth then instructed Toothman to assist him in re-checking all telephones. It was during this second check that the wire inside the No. 32 telephone was found severed. Toth immediately discussed the matter with Ribel and Toothman. Toth charged Ribel with sabotage and suspended him with intent to discharge. Toth based his suspension on his belief that Ribel was the only man who could have sabotaged the phone, as he was the only worker who had been alone along the face of the mine at this time.
 
 
 9
 On December 5, 1983 the Secretary of Labor ("Secretary") filed a complaint of discrimination on behalf of Ribel against Eastern with the Mine Safety and Health Commission. The complaint alleged that Eastern had illegally discharged Ribel in retaliation for his prior discrimination and safety complaints, in violation of Sec. 105(c) of the Mine Act, 30 U.S.C. Sec. 815(c). The Commission referred the case to an Administrative Law Judge ("ALJ"), who found that Eastern violated Sec. 105(c). The ALJ determined that Ribel had engaged in protected activity when he made safety complaints and filed a discrimination complaint with respect to double cutting. The ALJ found that Ribel's discharge was motivated at least in part by these protected activities. The ALJ, moreover, held that Eastern failed to establish that Ribel had in fact damaged the company's telephone. The Commission upheld the ALJ's determination that Toth had "seized upon" the incidents of sabotage to the telephone as a "pretext" for his discharge.
 
 
 10
 Ribel retained private counsel sometime before his complaint was acted on by the Secretary. The ALJ rejected Ribel's request for attorney's fees for his private attorney on the grounds that the statute did not expressly provide for such an award where the prosecuting party is the Secretary. The Commission reversed the ALJ's decision, and granted Ribel an award of attorney's fees and costs, stating that private counsel may receive a fee award where such counsel's efforts are "nonduplicative of the Secretary's efforts and ... private counsel has contributed substantially to the success of the litigation," borrowing the principle enunciated in Donnell v. United States, 682 F.2d 240 (D.C.Cir.1982), cert. denied, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983).
 
 II.
 The Discrimination Claim
 
 11
 Section 105(c)(1) of the Mine Safety and Health Act prohibits the discrimination against any miner who has filed or made a complaint under that Act, including a complaint notifying the employer of an alleged danger or a safety or health violation in a mine.
 
 
 12
 It is well settled that to establish a prima facie case of discrimination under Sec. 105(c) of the Act, the complaining miner bears the burden of proving that (1) he engaged in protected activity and (2) the adverse action complained of was motivated in any part by said activity. The mine operator may rebut the prima facie case by showing that the miner was not engaged in protected activity or that the adverse action was not motivated in any part by the protected activity. If an operator is unable to rebut a prima facie case of discrimination, it may nevertheless prove an "affirmative defense" by showing that (1) the discharge was also motivated by the miner's unprotected activity and (2) it would have taken the adverse action in any event for the unprotected activities alone. This affirmative defense, termed the Pasula-Robinette test, must be shown by a preponderance of the evidence. Secretary on behalf of Pasula v. Consolidation Coal Company, 2 FMSHRC 2786, 2 BNA MSHC 1001 (Oct. 1980), rev'd on other grounds, sub nom. Consolidation Coal Co. v. Marshall, 663 F.2d 1211 (3rd Cir.1981); Secretary on behalf of Robinette v. United Castle Coal Company, 3 FMSHRC 802, 2 BNA MSHC 1213 (April 1981). In this review, the Commission's findings of fact, if supported by substantial evidence on the record considered as a whole, are conclusive.
 
 
 13
 We find that the facts determined by the ALJ are supported by substantial evidence. The management at Eastern, including Toth, had been aware of the numerous health and safety complaints made by Ribel and his fellow crew members. In addition, it seems clear that both Hawkins and Toth desired the crew to resume double cutting in order to increase productivity. The ALJ found that Toth and Hawkins, apparently frustrated by the miners' refusal to resume double cutting, became hostile toward Ribel, which hostility was demonstrated in part by Toth's statement to Wells at the meeting held in August that Wells "would be next." The ALJ found that Toth's statement to Wells constituted a threat. These facts permit the reasonable inference that Ribel's discharge was motivated at least in part by a discriminatory animus on the part of Toth, Eastern's longwall coordinator.
 
 
 14
 Eastern has argued that the ALJ employed an incorrect legal standard in rejecting Eastern's affirmative defense. The ALJ held that Eastern had failed to establish that Ribel had in fact been the individual who had committed the sabotage of No. 32 telephone. Eastern asserts that the issue of whether Ribel was in fact the individual who performed the act of sabotage is irrelevant: Toth's good faith belief that Ribel was the guilty individual is sufficient to overcome the discrimination claim. In other words, the discharge of Ribel may have been in error, but it was not discriminatory, and thus did not give rise to liability under Sec. 105(c) of the Act.
 
 
 15
 We do not find it necessary to reach this issue. The ALJ specifically found that Toth had "seized upon" the incident of sabotage to No. 32 telephone as a convenient reason to fire Ribel. This is a finding that Toth used the sabotage incident as a pretext, and he lacked a good faith or benign reason for discharging Ribel under this finding. Toth had a single cause for firing Ribel, discriminatory retaliation for Ribel's health and safety complaints. Eastern's argument that Toth's "good faith belief" should serve to exculpate it from liability regardless of whether Ribel had in fact committed the act of sabotage is inapposite: It assumes that there was a "mixed motivation" for the discharge of Ribel, which mixed motivation was not found by the ALJ. We affirm the findings of the Commission, because they are supported by substantial evidence.
 
 Attorney's Fees
 
 16
 Section 105(c) of the Act contains three subsections. Subsection (1) establishes the right of the employee to be free from a retaliatory discharge or discrimination. Subsection (2) establishes the employee's right to file a complaint with the Secretary of Labor, and requires the Secretary to investigate the complaint and to file a complaint with the Commission if the Secretary finds that Sec. 105 has in fact been violated. Subsection (3) establishes the right of the employee to bring a claim on his own behalf if the Secretary has determined that, after investigation, no Sec. 105(c) violation has occurred. Thus, even where the Secretary upon investigation has failed to find a violation, the miner has a right to bring an action on his own behalf under Sec. 105(c)(3). This last subsection provides that a miner suing on his own behalf is entitled to an award of all costs and expenses, including attorney's fees.
 
 
 17
 This case has been brought under Sec. 105(c)(2); i.e., the Secretary has been the prosecuting party, suing on the complainant's behalf. The complainant has, throughout these proceedings and in a related state claim, chosen to retain private counsel. The Commission awarded Ribel limited fees and costs, finding that Ribel had the right to such fees and costs only to the extent that his private counsel's efforts were nonduplicative of the Secretary's efforts, and contributed substantially to the success of the litigation. Ribel appeals to this court seeking full recovery of his attorney's fees and costs.
 
 
 18
 The Supreme Court addressed the general issue of awarding attorney's fees in the case of Alyeska Pipeline Service Company v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This case affirmed the "American Rule" that attorney's fees are not ordinarily recoverable by the prevailing party in federal litigation in the absence of statutory authorization. The court noted that Congress has not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the court might deem them warranted. What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights." Id. at 260, 95 S.Ct. at 1623 (footnote omitted).
 
 
 19
 It is not the function of the judiciary to create entitlements in the absence of statutory authorization. Aware of this principle, Ribel argues that this court should construe Sec. 105(c)(3), which grants the right to recover attorney's fees and costs, as impliedly granting the same right to litigants who retain private counsel in Sec. 105(c)(2) actions brought by the Secretary. We reject this argument for two reasons. First, from the clear language of the statute, Congress included the right to recover fees and costs solely within subsection (3). Had Congress intended to entitle litigants to the recovery of such fees and costs under any Sec. 105(c) litigation, it could easily have provided the more general right. That Congress limited this right to Sec. 105(c)(3) actions seems beyond dispute. Second, it seems very reasonable that Congress intended for the statute to be construed to limit the right to recover attorney's fees and costs to (c)(3) actions. In subsection (c)(2) actions, the Secretary is the prosecuting party, suing on behalf of the complainant. Subsection (c)(3) provides the complainant with the ability to bring his own claim where the Secretary has declined to do so. It makes good sense that Congress would authorize the award of fees and costs where the complainant had brought the action on his own behalf, and would refuse to authorize such an award where the Secretary served as the representative of the complainant without expense to the complainant.
 
 
 20
 We thus reverse the Commission's determination that Ribel was entitled to a limited award of attorney's fees and costs. We find that an action brought by the Secretary under Sec. 105(c)(2) of the Mine Act does not authorize any such award.
 
 
 21
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 [1]
 Chocks, also known as shields, are hydraulic devices used as roof supports during the longwall mining process. Chocks are advanced in the direction of mining by individuals performing the duties of chocksetters