ATLANTIC STATES LEGAL FOUNDA-
TION, INC.; State of New York and
Thomas C. Jorling, Commissioner of the
New York State Department of Environ-
mental Conservation, Plaintiff,

v.

The ONONDAGA DEPARTMENT OF
DRAINAGE AND SANITATION and
Onondaga County, New York, Defen-
dants.

No. 88–CV–0066.

United States District Court,
N.D. New York.

Sept. 5, 1995.

Allen, Lippes & Shonn, Buffalo, NY, for plaintiff Atlantic States Legal Foundation (Francis C. Amedola, of counsel).

John A. Gerber, Onondaga County Attorney, Syracuse, NY, for defendants (Luis A. Mendez, Deputy County Attorney, of counsel).

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

The plaintiff, Atlantic States Legal Foundation (hereinafter "ASLF") commenced this lawsuit against the defendants Onondaga County Department of Drainage and Sanitation and Onondaga County (hereinafter "County") on January 19, 1988, pursuant to § 505 of the Clean Water Act for illegal discharges of inadequately treated and raw sewage from the Metropolitan Syracuse Wastewater Treatment Plant (Metro Plant), associated pumping stations, and combined sewer overflows (CSO). New York State, through the Department of Environmental Conservation (DEC), intervened in this case and the parties negotiated a Judgment on Consent (Consent Judgment) which was signed by this Court on January 31, 1989.

In this motion, ASLF seeks an award of attorneys' fees and expert witness fees pursuant to § 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d). ASLF claims that it is the prevailing party of a motion dated December 21, 1994 and that, as such, is entitled to an award totaling thirty-seven thousand four hundred ninety-eight and 34/100 ($37,498.34) dollars. ASLF also claims that it is entitled to an award of sixteen thousand five hundred ninety-three and 55/100 ($16,593.55) dollars in litigation fees for the work expended preparing to oppose a motion made by the defendants on January 20, 1994. That motion was withdrawn by the defendants on February 25, 1994. The defendants, in turn, have moved pursuant to § 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d) claiming that they were the prevailing party in the December, 1994 motion and are entitled to an award of attorneys' fees and expert witness fees in the sum total of fifty thousand six hundred seventy-two and 26/100 ($50,672.26) dollars.

In the December, 1994 motion, ASLF sought the imposition of stipulated penalties for the County's violation of the interim effluent limits established in the Consent Judgment, and for the County's failure to complete a Municipal Compliance Plan (MCP). ASLF also sought an injunction barring the construction of projects related to the Consent Judgment until the MPC was completed and approved by the DEC.

The Court granted ASLF"s motion for penalties for the County's violations of the effluent limits. The penalties, however, were limited in that they did not include penalties for five alleged excesses about which there was a legitimate dispute. The Court also declined to assess any penalties for excesses due to construction undertaken pursuant to the Consent Judgment.

The Court also denied ASLF"s motion for penalties regarding an alleged late submission of the MCP. However, the Court did find (1) that the County had not submitted a completed version of the required MCP contrary to the express provisions of the Consent Judgment; (2) that, contrary to the County's claim, the State did have the power to declare that the model evaluations were complete and thereby start the 90–day period within which the MCP was to be submitted; (3) and that the County had no sound basis for claiming inadequate quality of the models. The Court reasoned that penalties should not be imposed, not because there was no basis for such penalties, but because the overriding goal of the Consent Judgment was the execution of the MCP in a timely fashion, and it was believed that penalties would slow down that process. The process was moving forward, but at a slow pace. Consequently, the Court ordered the County to comply with the terms of the Consent Judgment.

Finally, the Court denied ASLF's motion for injunctive relief seeking to prevent the

County from beginning construction on the Marketplace/Stadium CSO project and the Harbor Brook CSO project. The Court found that as to the former ASLF had foregone the opportunity to comment on the project, and as to the latter ASLF would have an opportunity to comment in the future.

## II. DISCUSSION

### A. Attorneys' Fees Under The Clean Water Act

Plaintiff ASLF seeks an award of legal fees and certain costs relating to its opposition to a motion withdrawn by defendants, the County, and relating to its motion to enforce the Consent Judgment pursuant to the fee shifting provision of the Clean Water Act, 33 U.S.C. § 1365(d) (§ 505(d) of the Clean Water Act). The Act states, in relevant part, that:

> [t]he court, in issuing an final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.

33 U.S.C. § 1365(d). The Court, therefore must first determine which party prevailed and then determine whether an award of fees is appropriate.

### B. Prevailing Party Standards

■ Since their is scant case law directly on point, the Court determines whether a party has prevailed in a legal action by applying the legal principles that have developed in cases involving "virtually identical" language to the fee shifting provision of the Clean Water Act. *See, United States v. Board of Education,* 605 F.2d 573, 576 (2d Cir.1979); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[1] The precise standard applied depends upon whether that party is a plaintiff or defendant. The standard applied to a plaintiff is less strict than that of a defendant. This reflects the general policy set forth by Congress to encourage legitimate private citizen lawsuits in furtherance of policies that Congress considers "of the highest priority." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (involving attorneys' fees under Civil Rights Act fee shifting statute, 42 U.S.C. § 1988).

■ A plaintiff is not required to be successful on all of his claims, i.e., need not obtain all the relief sought, to be considered a prevailing party. *See, Gingras v. Lloyd,* 740 F.2d 210, 212 (2d Cir.1984). Rather, "he may be said to have prevailed if he has 'succeed[ed] on any significant issue in litigation which achieves some of the benefits [he] sought in bringing suit' " *Id.,* (quoting, *Hensley v. Eckerhart,* 461 U.S. 424, 426, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). This Circuit has held that a plaintiff may be entitled to an award of fees if his action was "a catalytic, necessary, or substantial factor in attaining the relief." *Gerena–Valentin v. Koch,* 739 F.2d 755, 758–59 (2d Cir.1984) (citations omitted). Thus, even when the litigation is settled, but nevertheless, prompts a defendant to change his policies, a plaintiff may be said to have prevailed. *See, Gagne v. Maher,* 594 F.2d 336 (2d Cir.1979); *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (Consent decree giving plaintiff "virtually all the relief sought in the complaint").

■ For a defendant to be considered a prevailing party and to justify the award of fees, he must meet a stricter standard. A prevailing defendant can recover fees only when the Court finds that the litigation was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978). The test has been articulated to be "whether the claim itself is meritless." *Blackwelder v. Safnauer,* 689 F.Supp. 106, 148 (N.D.N.Y. 1988). The effect is to create a deterrent to "frivolous litigation." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 687–688, 103 S.Ct. 3274,

---

1. For examples of such "virtually identical" statutes, see 42 U.S.C. § 7604(d) (§ 304 of the Clean Air Act) and 42 U.S.C. § 1988.

3278, 77 L.Ed.2d 938 (1983). Thus, even an entirely successful defendant may not be entitled to an award of fees.

### C. December, 1994 Motion By ASLF

■ The Court first notes that "the fee applicant bears the burden of establishing entitlement to an award." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). In this motion, which was decided on April 10, 1995, ASLF sought the imposition of stipulated penalties for the County's violation of the interim effluent limits established in the Consent Judgment, and for the County's failure to complete a Municipal Compliance Plan (MCP). ASLF also sought an injunction barring the construction of projects related to the Consent Judgment until the MPC was completed and approved by the DEC. The County opposed the motion arguing that the violations of the interim effluent limits were excusable, completion of the MCP was impossible at that time, and therefore, failure to meet a stipulated time constraint was excusable, and that ASLF was not entitled to injunctive relief because it had either foregone its available remedies, or had remedies still available.

The Court found that both ASLF and the County submitted records indicating that the County had exceeded the limits set forth in the Consent Judgment on no less than 183 occasions, and that there was some dispute as to five other occasions as to which ASLF claimed exceedencs. The Court further found that the plain language of the Consent Judgment conferred a strict liability standard on the County, and that by signing the Consent Judgment, the County had agreed to such a standard and the penalties set forth in the Consent Judgment. The Court granted ASLF's motion as to all penalties not incurred due to actions undertaken pursuant to the Consent Judgment, not in dispute on the face of the records submitted, and not waived by ASLF.

As to the penalties sought for the failure by the County to Submit the MCP in a timely fashion, the Court's findings were in substantial agreement with ASLF. However, in an effort to achieve the ultimate goal of the Consent Judgment and the December,

1994 motion, i.e., expeditious completion of the MPC process, the Court declined to impose the penalties set forth in the Consent Judgment. The Court determined that it was appropriate for the State to determine when the UFI model evaluations were complete, that the State had made such a determination, that the State had notified the County that it was required to submit its MPC within 90 days, and that the County had failed to submit a proper MPC. The Court further found that the arguments of the County seeking to excuse itself from compliance with the terms of the Consent Judgment were without a scientific basis.

As to ASLF's motion for injunctive relief seeking to prevent the County from beginning construction on the Marketplace/Stadium CSO project and the Harbor Brook CSO project. The Court found that as to the former ASLF had foregone the opportunity to comment on the project, and as to the latter ASLF would have an opportunity to comment in the future.

From the foregoing, it is clear that plaintiff ASLF is a prevailing party as to the December, 1994 motion. ASLF did not obtain all the relief sought in the motion. The Court denied ASLF's motion to the extent that it sought certain penalties and injunctive relief. The Court, however, granted substantial penalties for multiple violations of the Consent Judgment, and stated that, although not granting penalties, the County had failed to comply with the Consent Judgment as to the timely submission of the MPC. Finally, the Court also stated that the decision not to impose certain penalties set forth in the Consent Judgment was in recognition of the ultimate goal of the December, 1994 motion— the expeditious completion of the MPC. Thus, it is clear that ASLF prevailed, since it succeeded on a significant number of issues and achieved much of the relief sought. *See, Gingras v. Lloyd,* 740 F.2d 210, 212 (2d Cir.1984). Accordingly, the Court grants ASLF's motion for attorneys' and expert witness' fees pursuant to 33 U.S.C. § 1356(d), in the amount set forth below.

### D. January, 1994 Motion By The County

■ The Court next considers the motion by ASLF pursuant to 33 U.S.C. § 1365(d) for

the attorneys' and expert witness' fees related to the January, 1994 motion by the defendants which was withdrawn. In that motion, the County sought to have ASLF removed as a plaintiff for lack of standing, to have the County declared the sole authority to determine when the models were complete, and to excuse the County from complying with the Consent Judgment. The County also sought injunctive relief and a declaration that ASLF was in contempt of the Consent Judgment. It is clear to the Court that as to a substantial part of the issues raised by the January, 1994 motion the plaintiff, ASLF, ultimately prevailed by reason of this Court's decision in the December, 1994 motion. As to the status of ASLF as a plaintiff, the Court has found ASLF to be a proper plaintiff. As to whom the Court found to be the proper party to determine when the models were complete, the Court held that, pursuant to the Consent Judgment, the State is the proper party to make that determination. As to whether the County is bound by the conditions and deadlines of the Consent Judgment, the Court held that the County clearly was bound, notwithstanding the fact that the Court declined to penalize the County to the full extent authorized in the Consent Judgment.

The Court, however, is faced with a novel question—whether a prevailing party, having received a final determination as to one motion, may recover as a prevailing party for the legal and expert witness fees incurred in opposing a prior motion, which was withdrawn by the movant at the eleventh hour, but nevertheless presented substantially the same issues decided in the subsequent motion. When distilled down, the issue becomes whether ASLF may recover the fees relating to the issues decided in the subsequent motion. Since many of the issues decided in the December, 1994 motion, and as to which ASLF was a prevailing party, were identical to those researched and briefed for the January, 1994 motion, the Court finds

that ASLF "has achieved some vindication" of its rights which have received recognition by the court. *See, Gingras,* 740 F.2d at 212. The Court further finds that ASLF has established that the litigation efforts expended in the withdrawn motion were a "necessary and important factor" in obtaining the subsequent results. *See, New York State Ass'n of Career Schools v. State Educe. Dep't,* 762 F.Supp. 1124, 1126 (S.D.N.Y.1991) (citing, *Correa v. Heckler,* 587 F.Supp. 1216, 1221 (S.D.N.Y.1984)).[2] Thus, ASLF is a prevailing party and entitled to the attorneys' and expert witness' fees incurred in the preparation to oppose the January, 1994 motion.

### E. Calculation of Attorneys' And Expert Witness' Fees

 "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. In general, the reasonable rate used in a determination of the amount of attorneys' fees to be awarded "should be calculated according to the prevailing rates in the community *'for similar services by lawyers of reasonably comparable skill, experience and reputation.'"* *Cefali v. Buffalo Brass Co.,* 748 F.Supp. 1011, 1018 (W.D.N.Y. 1990) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058–59 (2d Cir.1989)) (emphasis in original). The Second Circuit has articulated that the proper rule is for the district court to "consider the prevailing rates in the district in which the court sits." *Polk v. New York State Dep't. of Correctional Servs.,* 722 F.2d 23, 25 (2d Cir.1983) (awarding attorneys' fees under Section 1988).

 The rationale for this rule lies in its simplicity and neutrality. *Donnell v. U.S.,* 682 F.2d 240, 251 (C.A.D.C.1982). It allows the district court to determine "the prevail-

2. In addition, the Court notes that failing to award fees to a party who subsequently prevailed on issues which were fully researched and briefed, and that would have been determined by the Court at that time, but for the withdrawal by the movant would frustrate the policy behind 33 U.S.C. § 1365(d). A denial of fees would effectu-

ate a strategy by which one party may so greatly increase the litigation costs to the private citizen plaintiff as to erect a barrier to bringing the lawsuit at all. *See, Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

ing market rate within its jurisdiction, an inquiry about which it should develop expertise." *Id.* Further, such a rule does not work

> to any clear advantage for either those seeking attorneys' fees or those paying them. High-priced attorneys coming into a jurisdiction in which market rates are lower will have to accept those lower rates for litigation performed there. Similarly, some attorneys may receive fees based on rates higher than they normally command if those higher rates are the norm for the jurisdiction in which the suit was litigated.

*Id.* Therefore, the appropriate hourly fee to be applied in calculating an award of attorneys' fees is the prevailing rate in the district in which the suit is litigated, irrespective of the fee usually charged by the attorney.

 Certain exceptions to this rule have been articulated. Such exceptions include: (1) the need for "special expertise of counsel from a distant district," *Polk,* 722 F.2d at 25, (2) "when local counsel are unwilling to handle the case," *In Re "Agent Orange" Product Liability Litigation,* 611 F.Supp. 1296, 1308 (E.D.N.Y.1985), *aff'd in part and rev'd in part,* 818 F.2d 226 (2d Cir.1987), and (3) "when a lawyer files a suit in his or her home district that is properly maintainable there, and the case is transferred to the forum district. . . ." *Id.* (quoting *Polk,* 722 F.2d at 25). However, the District of Columbia Circuit articulated that a case for which much of the work must be performed away from the district court's community does not alone provide a sufficient reason for deviating from the general rule. *Donnell,* 682 F.2d at 252.

 As this case does not fit into any of the articulated exceptions to the locality rule, the court must apply the prevailing market rates found within the Northern District of New York in its calculation of attorneys' fees to be awarded to ASLF. Therefore, the court will award attorneys' fees in the present action based on the following hourly rates:

| Attorney | Type of Work | Hourly Rate |
|----------|--------------|-------------|
| Partner | Legal | $150 |
| | Travel | $75 |
| Associate | Legal | $100 |
| Paralegal | Legal | $50 |

Applying the above rates to the instant case, the Court makes the following adjustments to the fee schedules attached to the affidavits submitted in support of ASLF's motion: (1) as to the law firm of True, Walsh & Miller, adjusting for travel and associate time, reduce the amount sought to thirteen thousand two hundred twenty-four and 49/100 ($13,224.49) dollars; (2) as to the law firm of Allen Lippes & Shonn, reduce the amount sought to thirteen thousand three hundred sixty-three and 30/100 ($13,363.30) dollars; and (3) as to ASLF's legal staff, reduce the amount sought to eight thousand five hundred seventy-eight and 75/100 ($8,578.75) dollars.[3] The total award, therefore, including the expert witness fees, equals forty-eight thousand nine hundred sixty-three and 35/100 ($48,963.35) dollars.

 The calculation of the fee award does not end with the computation of a sum from the reasonable fees multiplied by the hours expended. Other factors "may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained'" *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. If a plaintiff has not won complete success, "even if the claims were interrelated, nonfrivolous, and raised in good faith," the Court may in its discretion adjust the fee downward. *Id.* 461 U.S. at 437, 103 S.Ct. at 1941. In the instant case, the plaintiff was substantially successful. The Court, however, recognizes that the plaintiff was not directly implicated in all of the issues raised on the January 20, 1994 motion, did not prevail as to all forms of relief sought in its motion of December 14, 1994, and, due to the identity of issues, may have performed duplicative research, drafting, and other services. Thus, the Court reduces the fee amount by twenty percent (20%) to thirty-nine thousand one hundred seventy and 68/100 ($39,170.68) dollars.

**3.** The Court made no adjustment to the expert witness fees of Donald J. Hughes set forth in the amount of $13,796.60.

## III. CONCLUSION

The Court holds that plaintiff ASLF is the prevailing party as to the January, 1994 and December, 1994 motions, and as such is entitled pursuant to 33 U.S.C. § 1365(d) to an award of attorneys' and expert witness' fees as set forth herein, and for the foregoing reasons, it is hereby

**ORDERED,** that plaintiff ASLF's motion for attorneys' and expert witness' fees, pursuant to 33 U.S.C. § 1365(d), is GRANTED in the amount of thirty-nine thousand one hundred seventy and 68/100 ($39,170.68) dollars.

**IT IS SO ORDERED.**